IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIDDLE EAST FORUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 1:17-cv-767-RCL-GMH |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**RESPONSE TO DEFENDANT'S PROPOSED RATE OF PRODUCTION**

At the January 25, 2018 status conference, this Court granted plaintiff leave to file a response to the declaration filed by defendant on February 16, 2018, in which it claimed it would impose an impossible burden for this Court to order more than 500 pages produced per month. Yet plaintiff has waited now over a year to receive responsive records, and it imposes an unjust burden upon plaintiff to have that wait prolonged, when it has been the agency's inaction that has caused the delay. As noted at the status conference, plaintiff narrowed its request in August of 2017, and was told the agency would begin processing records. Plaintiff was promised that responsive records would be produced to it at the end of December 2017, and then when no records were forthcoming, would be available by the end of January 2018. The first records were finally provided to plaintiff on February 12, 2018.

The Middle East Forum (MEF) is a well-recognized think tank that focuses on promoting American interests in the Middle East and protects Western values in the region. The material sought here involves grants given by the agency to outside groups for the purpose of combatting radical ideology inside the United States. This material is of significant importance to the debates

of the day over numerous policy decisions being made. More significantly, it is of time-sensitive importance given the efforts to pass new appropriations bills by Congress, including those for the Department of Homeland Security, and following such appropriations, efforts within the department to prepare and solicit candidates for any new grant programs. The records being sought will increase plaintiff's understanding of the decisions and criteria used in programs, and will therefore be of vital importance in advocating to Congress and the agency.

Courts regularly impose a production schedule greater than 500 pages per month upon the government in FOIA actions. *Nat'l Day Laborer Org. Network v. ICE*, No. 10-CV-3488, Docket No. 104 (S.D.N.Y July 29, 2011) (ordering the FBI to produce 5,000 pages of responsive documents every two weeks, and ICE to produce 5,000 pages of responsive documents within 17 days); *Judicial Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138, 141 (D.D.C. 2002) (ordered to process within 60 days 15,000 pages of material); *Det. Watch Network v. ICE*, No. 14-CV-0583, Docket No. 48 (S.D.N.Y July 3, 2014) (ordering DHS to either review a minimum of 4,000 documents per month, or produce a minimum of 1,500 pages per month, and ordering ICE to produce a minimum of 1,200 pages per month). Moreover when an agency is shown to have unreasonably delayed production, a court accordingly may order a prompt production schedule. See, e.g., *Schulte v.Dept. of Health and Human Services*, 14-cv-887-JDB, ECF No. 28 (D.D.C. June 5, 2015)(ordering that HHS produce at least 3,000 pages per month for two months); id., ECF No. 23 (ordering that HHS produce at least 1,000 pages per month for three months).

In *Bounadoui v. Federal Bureau of Investigation*, 17-cv-4782 (N. Ill, 2017) the Court there rejected the FBI's claim that it could also only produce 500 pages per month. The Court noted there, as here, the principality of defendant's claim that it could not produce more rested on fairness to other parties, stating "Much of defendants' argument focused on the – focuses on

the unfairness to other FOIA requesters if the plaintiff is given priority through expedited processing. *Unfortunately, the Court can only focus on the fairness of defendants' treatment of plaintiff, who made a proper and valid request for documents under the FOIA statute*. The consequences for other requesters of an order expediting processing of plaintiff's request is something the defendants must address internally with regard to their own allocation of resources." (emphasis added).

The Court there also found that a production schedule which leads to a year's long production should only be granted where the "exceptional circumstances" requirement of 5 U.S.C. § 552(a)(6)(C)(i) are met. And such "exceptional circumstances" do not "include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." § 552(a)(6)(C)(ii). As Mr. Holzer's declaration makes clear, the backlog of requests at DHS seems only to be increasing and nothing indicates that the agency is making any reasonable effort to clear that backlog. Nor does anything indicate these requests result from anything other than a "predictable agency workload of requests." *See Holzer Dec.*

Other Court's in this district have also found that agencies can produce more despite protestations. In *American Center for Law and Justice v Department of State,* (, 16-cv-1976 (D.D.C, 2016) the State Department claimed that 300 pages was as much as was possible, however Judge Sullivan ordered that 1000 pages per month be produced.

While plaintiff certainly sympathizes with other parties seeking records, and has no desire to cause them delays, the claim that the agency truly cannot review more than 500 records per day seems unreasonable. In fact, 500 pages is close to the number of pages the typical contract attorney should be able to review in a single day. See David Degnan, *Accounting for the*

*Costs of Electronic Discovery*, 12 Minn. J.L. Sci. & Tech. 151, 165 (2011) ("Industry standards suggest that document reviewer scan, read, understand, and mark 50 documents [not pages] per hour or 400 documents per day."(emphasis added)); see also Chris Egan & Glen Homer, *Achieve Savings By Predicting And Controlling Total Discovery Cost*, The Metro Corp. Counsel (Dec. 1, 2008), http://www.metrocorpcounsel.com/pdf/2008/December/08.pdf ("For a typical linear review, an industry-recognized standard is approximately 50 documents per hour, per reviewer. For a conceptual review product, our historical data shows an average of 200 documents per hour, per reviewer."). If a private party in litigation with the Government argued that it could only review and produce 500 records per month because it was engaged in other litigation or important business activities, the Government surely would reject that argument out of hand and press to compel disclosure.[1]

While defendant claims that plaintiff seeks to impose demands that "are not practical or even feasible[,]" plaintiff has worked throughout this process to be accommodating to the agency and to reduce the burden on it. Plaintiff worked to narrow its request several times, first identifying certain specific custodians of records in August of 2017, and then recently further reducing the number of custodians of records as part of the narrowing and prioritization done following the status conference. As noted in the joint status report, there are 3,368 records of high priority to plaintiff, down significantly from what defendant indicated was terabytes of data

---

[1] When the shoe is on the other foot, the Government does not hesitate to demand production of millions upon millions of documents. In the merger context, for instance, the Government's discovery requests on average require private parties to review "47 GB of emails and other electronic documents using review tools," which translates to around "4.8 million pages (including attachments)." Peter Boberg & Andrew Dick, *Findings From the Second Request Compliance Burden Survey, The Threshold*, Volume XIV, No. 3, A.B.A. Section of Antitrust Law at 31–32 (Summer 2014). On average, private parties in merger review have about 5.9 months to meet the Government's demands for documents—which is less time than the at-issue FOIA request has been pending.

at the status conference. Plaintiff only asks this Court to order defendant to produce 1000 pages per month for the next three months so that those high priority records can be released. Following that, plaintiff is certainly willing to reduce any so-called burden on defendant and accept a lower rate of production on any further records to be produced. As noted above, courts have regularly ordered higher temporary rates of production, to be followed by lower rates once records of critical significance have been reviewed and released. Moreover, had defendant been working diligently on this matter at even 500 pages per month since November, the first time it indicated that it was preparing to release responsive records, then another three months would see the near full production of these high priority records.

Accordingly, we ask the Court to order that defendant produce 1000 documents per month until the 3,368 records identified in the joint status report as being prioritized records are fully produced, and 500 pages per month thereafter should any production after those prioritized records are released be necessary.

Respectfully Submitted,

*/s/ Chaim Mandelbaum*
Chaim Mandelbaum, VA Bar #86199
726 N. Nelson St., Ste. 9
Arlington, VA 22203
(703) 577-9973
chaim12@gmail.com
*Counsel for Plaintiff*